DECISION
Plaintiffs have timely appealed Defendant Clackamas County Assessor's clerical error correction for tax years 2002-03 through 2007-08. Plaintiffs named as Defendants both the county assessor and the Oregon Department of Revenue (the department) in their Complaint. The court granted the department's request to be removed as a named Defendant because they are not involved in the valuation of Plaintiffs' home, and have taken no action by which Plaintiffs are aggrieved. Henceforth, all references to "Defendant" are to the assessor.
 I. STATEMENT OF FACTS
The appeal involves the value of Plaintiffs' home, identified in the assessor's records as Account 01634066 for tax years 2002-03 through 2007-08, inclusive. The impetus for Plaintiffs' appeal was the discovery that their property taxes are higher than the taxes on other homes in the neighborhood. Plaintiffs complained to the assessor, and the assessor reduced their assessed value (AV) and property taxes for the six years under appeal. Defendant made the corrections under the clerical error provisions of ORS 311.205. The assessor did not change Plaintiffs' real market value (RMV).
The reduction in AV was $8,509 for tax year 2002-03, $11,385 for 2003-04, $23,465 for 2004-05, $46,454 for 2005-06, $52,745 for 2006-07, and $54,327 for tax year 2007-08. *Page 2 
Defendant issued refunds for those years of approximately $3,200 (including interest). While they appreciate the reduction as far as it went, Plaintiffs seek "a fair evaluation of [their] taxes as compared to homes of similar size and features in [their] neighborhood." (Ptfs' Compl at 3.) Specifically, Plaintiffs advised the Court that they would like the corrections Defendant made to go back to 1997, and that they would like a further reduction in AV for the years Defendant corrected for the clerical error (tax years 2002-03 through 2007-08) to bring their AV and property taxes more in line with the AV and taxes of other similar homes in their neighborhood. Plaintiffs made clear to the court that their primary concern is with their property taxes. Defendant disagrees with those requests.
 II. ANALYSIS
This case highlights both the importance of policing one's property tax statements, and the shortcomings of Measure 50, a voter approved referendum that altered Oregon's property tax system. By carefully reviewing their property tax statements, Plaintiffs discovered apparent discrepancies in their property value and taxes which, when brought to Defendant's attention, resulted in a reduction in Plaintiffs' AV and property taxes for a six-year period. That was the good news. The bad news is the shortcoming inherent in Measure 50, under which similar properties can have different values and different property taxes. Those discrepancies generally cannot be rectified by appealing either to the assessor or the Tax Court.
A. Correcting Assessed Value Back to 1997
Plaintiffs would like Defendant's correction to reach back to 1997. However, any such correction must be authorized by statute. In this case, Defendant's clerical error correction was authorized by ORS311.205. Under the authority of that statutory provision, the assessor is authorized to correct values for up to five years prior to the last certified roll. *Page 3 
Defendant made the correction to Plaintiffs' property in April 2008. The last certified roll at that point was for the 2007-08 tax year. The assessor was, therefore, authorized to make corrections to that year plus the five years prior to 2007-08. The five-year limit extended back to tax year 2002-03. That is the limit of the assessor's authority to make retroactive corrections. Neither the assessor nor the court has any greater authority to change Plaintiffs' property values. While Plaintiffs are unhappy that the correction did not go back to 1997, the year in which they believe the problem began, they did, nonetheless, achieve a significant reduction in value and taxes, a reduction that will carry forward for all future tax years (barring changes in Oregon's property tax system) under ORS 308.146, [1] a statute that generally limits the annual increase in maximum assessed value (MAV) to three percent. Moreover, because ORS 308.146(2) provides that AV is the lesser of RMV or MAV, the AV for most residential property, including Plaintiffs', is based on MAV, which means that AV will be capped at an annual increase of three percent. And, because taxes are imposed on AV, Plaintiffs will experience only incremental increases in property taxes, unless the voters approve taxes outside the Measure 50 limits.
B. Further Reductions in AV To Achieve Uniformity
Plaintiffs' other request is for a further reduction in their AV for the years Defendant made corrections pursuant to the clerical error correction provisions (tax years 2002-03 through 2007-08). In that regard, Plaintiffs have asked the court to align their AV and property taxes with those of their neighbors. Plaintiffs have presented information on four neighboring properties with similar RMVs but lower AVs and property taxes. What Plaintiffs are asking for is uniformity, something the court is not empowered to grant. *Page 4 
As the court briefly explained above, AV is the lesser of the property's RMV or MAV. ORS 308.146(2). RMV is intended to reflect the likely selling price of the property (i.e., the property's value on the open market). ORS 308.205 (defining RMV as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction"). Under ideal conditions, similar homes would have similar RMVs. However, that is not always the case.
More importantly, MAV is simply a mathematical calculation, established in 1997 as 90 percent of the property's 1995 RMV. Or Const, Art XI, § 11(1)(a). For years subsequent to 1997, MAV is the greater of "103 percent of the property's assessed value from the prior year or 100 percent of the property's maximum assessed value from the prior year * * *." ORS 308.146(1). Under that provision, MAV generally rises three percent per year. And, because MAV is typically lower than RMV for residential property, AV also increases three percent per year.
Prior to the passage of Measure 50, a taxpayer could successfully appeal the RMV of his or her property and effectively achieve uniformity, a constitutional guarantee. However, Measure 50 explicitly excepts itself from the uniformity requirements of Oregon's constitution, with the result that similar properties can have different AVs and property taxes. Subsection (18) of Article XI, section 11 (Measure 50) provides that "Section 32, Article I, and section 1, Article IX of this Constitution, shall not apply to this section." Those sections require uniformity.[2] As this court has previously noted inEllis v. Lorati, 14 OTR 525, 535 (1999), MAV is an artificial *Page 5 
and arbitrary number that, over time, will produce "various degrees of nonuniformity in the property tax system."
 III. CONCLUSION
The court has reviewed the matter and concludes that Plaintiffs' appeal must be denied because the relief they have requested is not authorized by Oregon law. There is no authority for reducing Plaintiffs' AV back to 1997; the clerical error correction made by Defendant back to the 2002-03 tax year is the extent of relief available. Moreover, there is no authority for adjusting Plaintiffs' AV to achieve uniformity with similar properties in the neighborhood, as explained above. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is denied.
Dated this ___ day of October 2008.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This document was signed by Magistrate Dan Robinson on October 2,2008. The Court filed and entered this document on October 2, 2008.
[1] All references to the Oregon Revised Statutes (ORS) are to 2001.
[2] Article I, section 32 provides in relevant part: "all taxation shall be uniform on the same class of subjects within the territorial limits of the authority levying the tax."
Article IX, section 1, provides: "The Legislative Assembly shall, and the people through the initiative may, provide by law uniform rules of assessment and taxation. All taxes shall be levied and collected under general laws operating uniformly throughout the State." *Page 1